# Exhibit A

eFiled
10/28/2024 3:06:51 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### (Civil Division)

**RYAN BURCH**
1055 Thomas Jefferson St, NW, Ste 540
Washington, DC 20007

individually and on behalf of all others
similarly situated,

                Plaintiff,

v.

**RUGSUSA, LLC**
251 Little Falls Drive
Wilmington, DE 19808

                Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Ryan Burch ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant RugsUSA, LLC ("RugsUSA" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     The market for rugs and carpets is highly competitive, with many options for consumers to choose from. Defendant seeks to carve out a larger own share of this market by offering "perpetual sales" that never end and discounted prices through its e-commerce store, touting "thousands of world-inspired rug designs at prices that can't be beat."[1]

2.     It is no secret that consumers actively seek out bargains and discounted items

---

[1] https://www.rugsusa.com/

when making purchasing decisions.  Retailers, including Defendant, are well aware of consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the merchandise available on its website (the "Products") through its deceptive sales tactics.

3.    When consumers visit Defendant's online store, they are shown purported "sale" prices on nearly <u>all</u> of Defendant's Products, including new product lines:



4.    However, Defendant's products <u>never</u> sell at the purported strikethrough price.

2

5.      It is well established that false "reference pricing" violates state and federal law. Nonetheless, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases to induce them into making a purchase they otherwise would not have made.

6.      As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

7.      Plaintiff brings this action on behalf of themselves and a proposed class of individuals who purchased products for personal, family, or household use from RugsUSA's Internet website.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this case pursuant to D.C. Code § 11-921, *et seq.* and the DC CPPA, D.C. Code § 28-3901, *et seq.* because the claims are brought under the laws of the District of Columbia.

9.      This Court has personal jurisdiction over this case pursuant to D.C. Code § 13-423, et seq. because RugsUSA transacts business in the District of Columbia and commits torts in the District of Columbia, as described in this Complaint.

10.      Venue is proper because this is where the cause of action accrued.

## PARTIES

11.      Plaintiff, Ryan Burch, is an individual consumer who, at all times material hereto, was a citizen and resident of Washington, DC.

12.     In or around February 2023, Mr. Burch purchased two "5' x 8' Botaniq Summerific Vibrance Rugs" and one "7' 6" x 9' 6" Botaniq Summerific Vibrance Rug" from Defendant's website, www.rugsusa.com.  At the time, the website showed a strikethrough price of $862.00, with a purported "sale" price of $155.16 for the two 5' x 8' rugs, and $850.00, with a purported "sale" price of $153.00 for the one 7'6" x 9' 6" rug – representing an 82 percent discount.[2]





---

[2] Screenshot from Mr. Burch's order confirmation email.

13.     Before purchasing the Product, Mr. Burch read and relied on Defendant's representations on Defendant's website and email confirmation that the Product was being offered at a discounted "sale" price, including but not limited to that the products were normally sold at a higher price and that the original, non-sale price of the Products was higher than the advertised price.  Based on Defendant's representations, Mr. Burch reasonably understood that the products he was purchasing regularly (and before the promotion Defendant was advertising) retailed at the list prices, that these published list prices were the market value of the Product that he was buying, that he was receiving the advertised discount and a price reduction as compared to the regular price, and that advertised discount was only available for a limited time (during the limited time promotion). He would not have made the purchase if he had known that the Product was not discounted as advertised, and that he was not receiving the advertised discount.

14.     When purchasing the Products, Mr. Burch also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representation and warranties by Defendant that the Products were ordinarily offered at a higher price.  Mr. Burch relied on Defendant's false, misleading, and deceptive representations and warranties about the Products in making his decision to purchase the Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Products, or would not have paid as much for the Products, had he known Defendant's representations were not true.  Defendant's representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

15.     Had Mr. Burch known the truth—that the representations he relied upon in making his purchase were false, misleading, and deceptive—he would not have purchased the

Products or would have paid less for the Products. Mr. Burch did not receive the benefit of his bargain, because Defendant's Products were not of the represented quality and value. Mr. Burch understood that each purchase involved a direct transaction between himself and Defendant, because the Products he purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

16.     Plaintiff faces an imminent threat of future harm. Plaintiff would purchase RugsUSA Products again if he could feel sure that Defendant would not illegally deceive him. But without an injunction, Plaintiff cannot trust that Defendant will comply with the consumer protection statutes. Accordingly, he is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products he would like to.

17.     Defendant breached its contracts with and warranties to Plaintiff and the putative class.

18.     When Plaintiff and other members of the putative class purchased and paid for the Products they bought, they accepted offers that Defendant made, and thus, a contract was formed at the time that they made a purchase. The offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised.

19.     Defendant's website, price quotes, and email confirmations list the market value of the items that Defendant promised to provide, regardless of the sales channel used to make the purchase. For each product purchased, Defendant agreed to provide a discount equal to the difference between the regular price listed by Defendant, and the price paid by Plaintiff and putative class members. Defendant offered to provide a product having a specific market value and regular price, for a specific discounted price, and to provide the promised discount.

Defendant also warranted that the regular price and market value of the products purchased were the amounts identified in the strike-through list prices, and warranted that Plaintiff and the putative class were receiving a discount.

20.    The regular price and market value of the item Plaintiff and the putative class members would receive, and the amount of the discount they would be provided off the regular price of the item, were specific and material terms of the contracts. These were also affirmations of fact about the Products and a promise relating to the goods.

21.    Plaintiff and other members of the putative class performed their obligations under the contracts by paying for the items they purchased.

22.    Defendant breached its contracts by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

23.    Whenever Defendant increases the price of its Products, it simultaneously increases the purported strikethrough price.

24.    Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

25.    Plaintiff was harmed as a direct and proximate result of Defendant's acts and omissions.

26.    Defendant commits the same unfair and deceptive sales practices for all of its Products.

27.    Plaintiff and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

28.    Defendant RugsUSA, LLC, is a Delaware limited liability company with a principal place of business in Cranbury, New Jersey.  Defendant manufactures, markets, and advertises and distributes its Products throughout the United States, including the District of Columbia.  Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant.

## FACTUAL BACKGROUND

29.    Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including he District of Columbia, through its e-commerce store.

### *State And Federal Pricing Guidelines*

30.    Federal and state courts have articulated the abuses that flow from false reference pricing practices.  For example, the United States Court of Appeals for the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up.  Retailers, well aware of consumers' susceptibility to a bargain, therefore, have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

31.    District of Columbia law prohibits false reference pricing practices such as those perpetrated by Defendant. The District of Columbia's Consumer Protection Procedures Act (CPPA) makes it unlawful to: "make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of

competitors or one's own price at a past or future time." D.C. Code § 28-3904(j).

32.    Defendant's advertised reference prices and discounts (including its percentage-off and strikethrough pricing) on its website violate the District of Columbia law because Defendant's advertised reference prices are inflated and fictitious, and its advertised percentage-off and dollars-off discounts are false.

33.    The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

34.    The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

35.    The FTC further provides that "[t]he advertiser should be especially careful [...] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**." 16 C.F.R. § 233.1(b) (emphasis added).

36.    The FTC also provides retailers with guidance as to retail price comparisons:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the

> same merchandise in the advertiser's trade area (the area in which
> he does business).  This may be done either on a temporary or a
> permanent basis, but in either case **the advertised higher price
> must be based upon fact, and not be fictitious or misleading.**
> Whenever an advertiser represents that he is selling below the
> prices being charged in his area for a particular article, he should
> be reasonably certain that the higher price he advertises does not
> appreciably exceed the price at which substantial sales of the
> article are being made in the area - that is, a sufficient number of
> sales so that a consumer would consider a reduction from the price
> to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

37.    Essentially, federal and state law provides that sales practices should be offered in good faith and accurately reflect the price at which comparable products are sold in the market.

### *Defendant's Deceptive Sales Practices*

38.    Defendant sells its Products through its e-commerce website, www.rugsusa.com.

39.    In an effort to increase sales, Defendant engages in a pervasive online marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price.  Defendant is aware that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a product's quality or value is difficult to discern.[3]

40.    Defendant deceives consumers through the utilization of a fictitious strikethrough reference price accompanied by a purported lower discounted price, and/or a "Limited Time Savings" sale percentage:

---

[3] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").



Ivory Shaggy Diamond Trellis 8' x 11' Area Rug

★★★★☆  472 Reviews

**$440.60** ~~$979.30~~

LIMITED TIME SAVINGS: Ends in 13h 28m 06s

Ivory

Rectangle    Runner

| 3' × 4' | 4' × 6' | 5' × 8' | ~~5' 7" × 6'~~ | 6' 7" × 9' |
| 7' 6" × 9' 6" | 8' × 11' | 8' × 11' 6" | 10' × 13' | 10' × 14' |

[4]

41.    Such representations are uniform for <u>all</u> Products listed on Defendant's website.

42.    The strikethrough reference prices and "% Discount" prices listed by Defendant are purely fictitious prices and not based on comparable sales offerings in the market nor are they the former price at which such Products were originally available for.  Instead, this fictitious price is merely offered for the purpose of deceiving consumers into believing they are receiving a bargain for their purchases.

43.    Defendant's sales on all RugsUSA Products have persisted continuously since at least January 20, 2021.  Indeed, on 100 percent of 63 archived snapshots of Defendant's site between January 20, 2021 and September 7, 2023, Defendant was running purportedly time-limited discounts on all RugsUSA Products every time the website was checked.

44.    In short, Defendant's sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing products they otherwise would not have purchased.

45.    Defendant's fake discount scheme is unfair. As discussed above, Defendant

---

[4] https://www.rugsusa.com/rugsusa/rugs/rugs-usa-tree-of-paradise-medallion/Orange/200KKCB22A-53077.html#fullModal

advertises fake discounts and false regular prices that induce consumers to purchase its Products and cause them substantial economic injury.  Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had higher regular prices, and market values and that customers were receiving discounts, when none of this was true. This caused Plaintiff and class members to make purchases they otherwise would not have made, pay more for their purchases, and deprived them of their expectancy interest in receiving the Products as advertised.

46.    Defendant's advertisements harm consumers by inducing them to make purchases they otherwise would not have made, based on false information. In addition, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

47.    Reasonable consumers, who rely on Defendant to provide accurate and truthful information about sales and pricing, cannot reasonably avoid this injury. And Defendant's fake discounts offer no countervailing benefits—misrepresenting products' prices harms both consumers and honest competition.

48.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. Plaintiff and the class's injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

## CLASS ACTION ALLEGATIONS

49.    **Class Definition**: Plaintiff brings this action individually and on behalf of a class of similarly situated individuals as a class action pursuant to Rule 23 of the D.C. Superior Court Rules of Civil Procedure.  The classes Plaintiff seeks to represent are defined as follows (collectively, the "Classes"):

(a)    ***Nationwide Class.***  All consumers who purchased one or more RugsUSA Products advertised at a discount during the applicable statute of limitations period (the "Class Period") in the United States.

(b)    ***District of Columbia Subclass***.  All class members who purchased the Products in the District of Columbia.

50.    Specifically excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

51.    Plaintiff reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

52.    ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, the District of Columbia Subclass comprises at least thousands of consumers throughout the District of Columbia, and the Nationwide Class comprises at least hundreds of thousands of consumers throughout United States.  The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

53.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual members of the Class and Subclass.  Common legal and factual questions include, but are not limited to Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products; (b) Whether Defendant's misconduct set forth in this Complaint demonstrates violates the statutes referenced herein; (c) Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public; (d) Whether Plaintiff and the Class and Subclass are entitled to injunctive relief; and (e) Whether Plaintiff and the Class and Subclass are entitled to damages under the same causes of action as the other Class Members.

54.     ***Typicality.***  Plaintiff is a member of the Classes he seeks to represent.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

55.     ***Adequacy***.  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class members he seeks to represent; his claims are common to all other members of the Classes and he has a strong interest in vindicating their rights; and he has retained counsel competent and experienced in complex class action litigation and he intends to vigorously prosecute this action.  Plaintiff has no interests which conflict with those of the Classes.  The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.  Defendant has acted in a manner generally applicable to the Classes, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

14

56.     *Superiority*.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.  Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

57.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the proposed Classes as a whole.

58.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of Defendant's wrongdoing.

59.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

<u>**COUNT I**</u>
<u>**Breach of Contract**</u>

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff brings this cause of action individually and on behalf of the Classes against Defendant.

62.     Plaintiff and class members entered into contracts with when they placed orders to

15

purchase Products from Defendant.

63.    The contracts provided that Plaintiff and class members would pay Defendant for the Products ordered.

64.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a former price, and a market value, equal to the advertised regular prices. They also required that Defendant provide Plaintiff and the class members with the advertised specific discount. These were specific and material terms of the contracts.

65.    Plaintiff and class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

66.    Defendant breached the contracts with Plaintiff and class members by failing to provide Products that had a regular price and market value equal to the advertised list price, and by failing to provide the promised discounts.

67.    Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters, on September 17, 2024.

68.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

## COUNT II
## Unjust Enrichment

69.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.    Plaintiff brings this cause of action in the alternative to his Breach of Contract claim, on behalf of himself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of himself and the District of Columbia Subclass.

16

71.    "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

72.    Plaintiff and members of the Class and the District of Columbia Subclass conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

73.    Defendant has knowledge of such benefits.

74.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are on "Sale" at a "% discount" and includes a strikethrough reference price higher than the purported original price of the Products, as described above.  These misrepresentations caused injuries to Plaintiff and Class and Subclass Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

75.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class and Subclass Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass Members for their unjust enrichment, as ordered by the Court.

## COUNT III
## Fraud

76.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

77.    Plaintiff brings this cause of action individually and on behalf of the Classes against Defendant.

78.    As discussed above, Defendant misrepresented and failed to disclose material facts about its sales practices, including misrepresenting strikethrough reference prices, misrepresenting "% Discounts" for product, and failing to disclose that its "sale" and "discount" prices were the normal prices at which the Products were typically sold, that its strikethrough prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

79.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

80.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and class members read and reasonably relied on them.

81.    Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

82.    These misrepresentations and omissions made by Defendant, as described above, upon which Plaintiff and members of the Class and the District of Columbia Subclass reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class and the District of Columbia Subclass to purchase the Products.

83.    Defendant's misrepresentations were a substantial factor and proximate cause in

18

causing damages and losses to Plaintiff and class members.

84.     Plaintiff and the class members were injured as a direct and proximate result of

Defendant's conduct because (a) they would not have purchased the Products if they had known

that the representations were false, and/or (b) they overpaid for the Products because the

Products were sold at a price premium due to the misrepresentation.

85.     The fraudulent actions of Defendant caused damage to Plaintiff and members of

the Class and the District of Columbia Subclass, who are entitled to damages and other legal and

equitable relief as a result.

## COUNT IV
## Breach of Express Warranty

86.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

87.     Plaintiff brings this cause of action individually and on behalf of the Classes

against Defendant.

88.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of

the Products, issued material, written warranties by advertising that the Products had a prevailing

market value equal to the advertised regular price. This was an affirmation of fact about the

Products (i.e., a representation about the market value) and a promise relating to the goods.

89.     Defendant also issued material, written warranties by representing that the

Products were being sold at an advertised discounted price. This was an affirmation of fact about

the Products and a promise relating to the goods.

90.     These warranties were part of the basis of the bargain and Plaintiff and members

of the class relied on this warranty.

91.     In fact, the Products did not have a market value equal to the purported regular

19

prices. And the Products were not actually sold at the advertised discounts. Thus, the warranties were breached.

92.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on September 17, 2024.

93.     Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

## COUNT I
### Violations of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.*
### (*On Behalf Of The District of Columbia Subclass*)

94.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed District of Columbia Subclass against Defendant.

96.     The District of Columbia's Consumer Protection Procedures Act (the "CPPA"), D.C. Code §§ 28-3901, *et seq.*, is the District of Columbia's principal consumer protection statute.

97.     The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

98.     Defendant is a "merchant" within the meaning of the CPPA because it sells, directly, consumer goods in the ordinary course of business. D.C. Code § 28-3901(a)(3).

99.     Defendant markets and sells consumer goods in the form of rugs as well as other home décor. Defendant markets and sells these products to DC consumers for personal, household, or family purposes, making Defendant's products consumer goods. *Id*. § 28-3901(a)(2)(B).

100.     Plaintiff and the District of Columbia Subclass purchased the Products advertised by Defendant with reference prices and discounts for personal, family or household purposes.

101.     Defendant has violated D.C. Code § 28-3904 by engaging in a number of deceptive acts and practices in its marketing, promotion, and sale of rugs, including:

(a) Representing its goods had characteristics or qualities that the goods did not have (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value) (D.C. Code § 28-3904(a));

(b) Advertising its goods without the intent to provide the goods as advertised (specifically, Defendant represented that the goods had a value equal to the reference price, when in fact they did not and instead had a much lower true value) (D.C. Code § 28-3904(h));

(c) Making false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions (D.C. Code § 28-3904(j));

(d) Engaging in price comparison advertising; by using terms such as ""____ % discount," "% Discount Running Now," and/or "sale" and providing strikethrough reference prices where the reference price was not in fact Defendant's own former price, or in the case of introductory advertisements, was not Defendant's future price (*id.*); and

21

     (e)  Engaging in other unfair or deceptive conduct in trade or commerce, as described herein.

102.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, inter alia:

     (a)  Defendant had exclusive knowledge of material information that was not known to Plaintiff and the District of Columbia Subclass;

     (b)  Defendant concealed material information from Plaintiff and the District of Columbia Subclass; and/or

     (c)  Defendant made partial representations which were false and misleading absent the omitted information.

103.    Defendant's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

104.    Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

105.    Defendant engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by D.C. Code § 29-3904.

106.    As a direct, substantial and/or proximate result of Defendant's conduct, Plaintiff and District of Columbia Subclass members suffered ascertainable losses and injury to business or property.

107.    Plaintiff and District of Columbia Subclass members would not have purchased the products at the prices they paid, if they had known that the advertised reference prices and

discounts were false.

108.    Plaintiff and District of Columbia Subclass members paid more than they otherwise would have paid for the products they purchased from Defendant.

109.    Defendant's false reference pricing scheme fraudulently increased demand from consumers. This fraud-on-the-market shifted the demand curve and enabled Defendant to charge higher prices than it otherwise could have charged.

110.    The products that Plaintiff and District of Columbia Subclass members purchased were not, in fact, worth as much as Defendant represented them to be worth.

111.    Plaintiff seeks, on behalf of himself and the District of Columbia Subclass: (1) the greater of statutory damages of $1,500 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs. D.C. Code § 29-3905(k)(2)(A)(i-ii), D.C. Code § 29-3905(k)(2)(B), and D.C. Code § 29-3905(k)(2)(C).

112.    The unlawful acts and omissions pled herein were, are, and continue to be part of a pattern or generalized course of conduct. Defendant's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendant from committing such unlawful practices. D.C. Code § 29-3905(k)(2)(D).

113.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the District of Columbia Subclass members and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff, the District of Columbia Subclass members and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is ongoing as of the date of the filing of this Complaint. If not enjoined by order of this Court, Defendant will or may continue to injure Plaintiff and District of Columbia consumers

through the misconduct alleged herein. Absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

114.    Defendant's conduct has caused substantial injury to the general public. Plaintiff individually seeks public injunctive relief to protect the general public by putting an end to Defendant's false reference price advertising, false discounts and omissions.

115.    Plaintiff and the District of Columbia Subclass members did not know, and could not have known, that these reference prices and discount representations were false.

116.    Plaintiff was not aware of Defendant's false discount advertising scheme and was not aware that the reference prices and discounts Defendant had previously advertised to him and upon which he had relied in purchasing Plaintiff's Purchased Products were false.

117.    It is likely that almost all of the members of the Class are still not aware, at the time of the filing of this Complaint, of Defendant's false discount advertising scheme.

118.    By Defendant's design, the false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover. Consumers who shopped on Defendant's website would have no way to know the true daily price histories and past selling prices for the products they viewed and purchased. Or that the advertised percentage-off and dollars-off savings were false. Consumers would have no way to know that Defendant's false discounting practices extended across all of Defendant's products. The bottom line is that the members of the Class have not discovered, and could not have reasonably discovered, Defendant's false discounting scheme.

119.    Based on information and belief, almost all of the Class will learn of the scheme for the very first time upon court-ordered class notice in this case.

24

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek

judgment against Defendant, as follows:

(a)    For an order certifying the proposed Classes naming Plaintiff as
representative of the Classes, and naming Plaintiff's attorneys as Class
Counsel to represent the Classes;

(b)    For an order declaring the Defendant's conduct violates the statutes and
common laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class and Subclass on all
counts asserted herein;

(d)    For actual, compensatory, statutory, and/or punitive damages in amounts
to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys'
fees and expenses and costs of suit.

## PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

Dated: October 28, 2024                     Respectfully submitted,

*/s/ James L. Kauffman*
James L. Kauffman (DC Bar No. 1020720)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson St, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
Email: jkauffman@baileyglasser.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant *
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Julian Diamond *
jdiamond@bursor.com
Matthew Girardi *
mgirardi@bursor.com
1330 Avenue of the Americas, Floor 32
New York, NY  10019
Telephone:  (646) 837-7150

Christin Cho *
christin@dovel.com
Simon Franzini *
simon@dovel.com
Grace Bennett *
grace@dovel.com
**DOVEL & LUNER, LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*\* Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Classes*